UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re: Carita Hughes,　　　　　　　　　　　　　　　　　Case No. 14-58178
　　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　Debtor　　　　　　　　　　　　　　　　　　　　Hon. Walter Shapero
_____/

## OPINION DENYING DEBTOR'S MOTION FOR DAMAGES AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

The Debtor stored some personal property at a storage unit facility located at in Southfield, Michigan, which was owned and operated by Storage Pros Southfield, LLC ("Creditor"), pursuant to a month-to-month rental agreement. Debtor defaulted in the required payments and, pursuant to applicable law, Debtor received from Creditor required notices of default and dates for a public auction to be held at the storage facility on November 25, 2014. The Debtor's bankruptcy was filed on November 24, 2014, the petition bearing a time-stamp indicating it was filed at 1:07 pm. The office of Debtor's attorney attempted to reach Creditor on November 24, 2014 to advise it of Debtor's bankruptcy filing. Creditor conducted the scheduled auction on November 24, 2014.

Thereafter Debtor filed the pending Motion for Damages and Sanctions for Violation of the Automatic Stay, seeking actual damages of $4,200, punitive damages of $4,200; and attorney fees of $750. There is no question that the automatic stay was in effect at the time of the auction. Rather the sole question here is whether or not the Creditor had sufficient timely notice of Debtor's bankruptcy filing prior to its having conducted the auction to sustain an award for the indicated amounts pursuant to the willful violation requirement of 11 U.S.C. § 362(k)(1).

The evidence indicated that, within an hour after Debtor's petition was filed, four telephone calls were made from Debtor's attorney's office to Creditor. The calls were made to a telephone

1

number for the Creditor that was (and likely only could have been) obtained from Creditor's website. According to the testimony of Peter Spickenagel, Creditor's Vice President of Operations (a) calls to that number, if not answered by someone on-site at the storage facility, are then automatically transferred after about four or so rings to a call center engaged by Creditor for that purpose; and (b) thereafter, an email transcription of the call, including the phone number (but not the identity) of the caller and the call center operator's notes would be sent to the on-site manager after the call was ended. Three of the four calls reflecting that process were admitted into evidence as Exhibits 2, 3, and 4. Exhibit 2 is the transcription of a call starting at 1:13 pm that went to Creditor's call center that lasted one minute and 41 seconds. It contains no information or reference identifying the caller or what is being called about and essentially only contains the recorded message of the receiving call center. Exhibit 3 is of a call commencing at 1:14 pm that likewise went to the call center, containing the call center's recorded message, but nothing from the caller, ending after one minute and two seconds, at 1:14 pm. Exhibit 4 is of a call commencing at 1:16 pm that also went to the call center and likewise commencing with its recorded message. This time, however there was some conversation between the call center recipient named Talia and the caller, who was Arryn Green, a paralegal-intern at Debtor's attorney's office. She is referred to as "Erin" in the transcript. The totality of that conversation, following the initial recorded message, was as follows:

> TALIA: Thank you for choosing Storage Pros. My name is Talia. Who do I have the pleasure of speaking with?
> ERIN: Hi, Talia. My name is Erin. How are you today?
> TALIA: I'm good. How are you?
> ERIN: I'm doing pretty well. I'm calling to hopefully speak with the manager or whoever handles, like, your accounts and billings.
> TALIA: Okay. You've reached the off-site customer service, so that means they're unavailable in the office right now.
> ERIN: Okay. Well, I just wanted to let you know that I am calling from a bankruptcy firm and it's regarding one of the units that you guys have, so I'm not sure who I

> would really need to speak to.
> TALIA: Yeah. You would need to speak with someone on site.
> ERIN: Oh, okay. All right then. I will call them back.
> TALIA: Okay. No problem.
> ERIN: Thank you.

That call lasted two minutes and one second. There was a fourth call around the same time as the other three. The testimony as to it was that it lasted only some seven seconds and therefore never even got to the call center.

A second employee of Debtor's attorney's office, law clerk Cassandra Leo, who had some supervisory duties over Ms. Green, testified that their habit and procedure was that after the calls were made, the results of those calls were reported to some other supervisory person like her, who if the situation warranted it, would follow up by the end of that day and likely no later, and in her case at that time, would be by 5:00 pm or so. Her habit was to make some sort of list or reminder of matters to be so followed up on by her and, when she did so and if it involved notification of a bankruptcy filing, telling the call recipient the purpose of the call, the name of the debtor, the bankruptcy case number, and the specific reason for the call in this case. She testified that she had no specific memory of what was done in this situation, or whether she in fact did any follow-up by additional calls or otherwise, nor did anyone produce any written or documentary proof of such. Nonetheless, Debtor contends that, pursuant to that procedure, Ms. Leo made a call to Creditor on November 24, 2014 between 4:00 pm and 6:00 pm that included the Debtor's name, bankruptcy case number, and the name of her bankruptcy law firm. However, Ms. Leo's own above-noted testimony does not specifically support that contention. Given the nature and extent of the call answering system in place and the ability of that system to keep records of all calls and information related to them, and the lack of any indication that any calls other than the four above-noted was made, the

3

Court is persuaded that there is insufficient credible evidence that Ms. Green reported the results of her calls to Ms. Leo or another supervisor, or if she did, that such was in turn followed up on as indicated. The evidence of their usual habits and practices in such cases is simply outweighed by the other hard evidence and other indicated facts. Therefore, the Court finds that the Debtor has not met her burden of proving by a preponderance that the alleged call by Ms. Leo took place and that such call put Creditor on notice of the germane facts that would constitute notice of the fact that Debtor had filed a bankruptcy petition.

As to the information that was in fact relayed by Debtor to Creditor, namely by the call admitted as Exhibit 4, quoted above, the Court finds that such is inadequate to constitute sufficient notice of Debtor's bankruptcy filing for purposes of satisfying the willfulness element required to support damages for a violation of the automatic stay. The information relayed is nonspecific, failing to mention the Debtor's name, the identifying number of the storage unit involved, the bankruptcy court involved, the bankruptcy case number, the name of Debtor's attorney's office, or even the relationship of the caller to the law firm (or her last name). Ms. Green's call mentioned that she was calling with reference to "one of the units that you guys have." However, in light of the evidence, this vague reference is insufficient to provide Creditor with adequate notice, even if she mentioned she was calling from "a bankruptcy firm." The Court is not at all persuaded by Debtor's argument that this call should have made Creditor's on-site manager generally aware there was a bankruptcy issue involved and that such general awareness should have caused Creditor to make further inquiry into the issue. *See In re Clayton*, 235 B.R. 801, 808 (Bankr. M.D.N.C. 1998) ("[T]he creditor may be charged with notice of the bankruptcy if it were in possession of sufficient facts to cause a reasonably prudent person to make further inquiry."). Creditor was not in possession of such

sufficient facts. Ms. Green herself, when she made the call, found the exchange of information during so insufficient that she indicated she would call back the on-site storage location to further pursue the matter with them. Further, the information relayed (i.e. that there was an issue with a bankruptcy firm) was not sufficiently specific enough to (a) put Creditor on notice of any bankruptcy filing, let alone a bankruptcy filing by the Debtor in particular; or (b) shift the burden to Creditor to inquire further as to the issue involved, particularly where Ms. Green herself declared that she would take it upon herself to further pursue the matter with the on-site storage location. Essentially, the Debtor at most alerted Creditor of an object in a haystack that may or may not be a needle.

As a separate and independent basis for denying Debtor's motion, the Court finds that Debtor has not met her burden of proving actual damages. Debtor testified that the items in storage that were auctioned by Creditor included furniture, computers, music, and clothing. Other than that general description, she did not further specify the type, age, condition, or value of the items. That kind of record is insufficient evidence to calculate and support a claim for damages. Further, because punitive damages are normally a function of the amount of actual damages (here Debtor claims punitive damages in an amount equal to claimed actual damages), that lack of proof of actual damages does not support a punitive damage award in any event.

Therefore, Debtor's motion is denied and the Court will contemporaneously enter an appropriate order.

**Signed on June 25, 2015**

```
                                          /s/ Walter Shapero
                                   Walter Shapero
                                   United States Bankruptcy Judge
```